**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 # 109.**

**Julie PHILLIPS and Jean Bonelli, Petitioners,**

v.

**Victoria BUCKLEY, Rebecca Lennahan, and Richard Westfall, Title Board.**

**No. 98SA236.**

Supreme Court of Colorado, En Banc.

June 29, 1998.

Brownstein Hyatt Farber & Strickland, P.C., Stanley Garnett, Denver, for Petitioners.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, Elizabeth A. Weishaupl, Assistant Attorney General, State Services Section, Denver, for the Title Board.

PER CURIAM.

Pursuant to section 1–40–107(1), 1 C.R.S. (1997), the petitioners challenge the decision of the initiative title setting board ("Title Board") refusing to set a title for a proposed constitutional amendment designated "1997–98 # 109." The petitioners are the proponents of the initiative. The text of the initiative, as well as the staff draft of the titles and summary considered by the board, are set forth in an appendix to this opinion.

The initiative concerns the elimination of limitations on funding for public schools. It authorizes the General Assembly to exempt public schools from certain statutory limitations without prior voter approval. It also excludes public school districts from constitutional spending and property tax revenue limitations and election, voter approval, and reserve requirements. The initiative modifies the definition of "fiscal year spending" to exclude state expenditures and reserve increases for funding public schools, and requires a one-time reduction in the state's base to exclude the state's fiscal year spending for funding public schools.

After submitting an initial version of the proposed initiative, the proponents submitted a second draft that contained changes marked by redlining and highlighting. The changes included the addition of a new subsection, subsection (10). The proponents then submitted a third draft, which failed to employ redlining and highlighting and instead indicated changes through the use of upper and lower case. In addition, subsection (10) did not appear in the third draft. The fourth and final version did not contain subsection 10.

The Title Board declined to set a title based on the proponent's failure to comply with the requirements of section 1–40–105(4), 1 C.R.S. (1997), which provides:

After the conference provided in subsections (1) and (2) of this section, a copy of the original typewritten draft submitted to the directors of the legislative council and the office of legislative legal services, a copy of the amended draft with changes highlighted or otherwise indicated, if any amendments were made following the last conference conducted pursuant to subsections (1) and (2) of this section, and an original final draft which gives the final language for printing shall be submitted to the secretary of state without any title, submission clause, summary, or ballot title providing the designation by which the voters shall express their choice for or against the proposed law or constitutional amendment.

The proponents challenge the Title Board's action, arguing that they substantially complied with section 1–40–105(4) and that this substantial compliance required the Title Board to set a title.

We reject the proponents' arguments, and affirm the action of the Board without opinion. *See* C.A.R. 35(e); *In re Initiative Pertaining to Proposed Constitutional Amendment Entitled "W.A.T.E.R. II"*, 831 P.2d 490, 491 (Colo.1992).

## APPENDIX

### * * * * * STAFF DRAFT * * * * *

### PROPOSED INITIATIVE
### "1997–98 # 109" [1]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING THE ELIMINATION OF LIMITATIONS ON FUNDING FOR PUBLIC SCHOOLS, AND IN CONNECTION THEREWITH, AUTHORIZING THE GENERAL ASSEMBLY TO EXEMPT STATE APPROPRIATIONS FOR FUNDING PUBLIC SCHOOLS FROM STATUTORY LIMITATIONS ON STATE APPROPRIATIONS WITHOUT PRIOR VOTER APPROVAL, EXCLUDING PUBLIC SCHOOL DISTRICTS FROM CONSTITU-

TIONAL SPENDING AND PROPERTY TAX REVENUE LIMITATIONS AND ELECTION, VOTER APPROVAL, AND RESERVE REQUIREMENTS, MODIFYING THE DEFINITION OF "FISCAL YEAR SPENDING" TO EXCLUDE STATE EXPENDITURES AND RESERVE INCREASES FOR FUNDING PUBLIC SCHOOLS, AND REQUIRING A ONE–TIME REDUCTION IN THE STATE'S BASE TO EXCLUDE THE STATE'S FISCAL YEAR SPENDING FOR FUNDING PUBLIC SCHOOLS.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING THE ELIMINATION OF LIMITATIONS ON FUNDING FOR PUBLIC SCHOOLS, AND IN CONNECTION THEREWITH, AUTHORIZING THE GENERAL ASSEMBLY TO EXEMPT STATE APPROPRIATIONS FOR FUNDING PUBLIC SCHOOLS FROM STATUTORY LIMITATIONS ON STATE APPROPRIATIONS WITHOUT PRIOR VOTER APPROVAL, EXCLUDING PUBLIC SCHOOL DISTRICTS FROM CONSTITUTIONAL SPENDING AND PROPERTY TAX REVENUE LIMITATIONS AND ELECTION, VOTER APPROVAL, AND RESERVE REQUIREMENTS, MODIFYING THE DEFINITION OF "FISCAL YEAR SPENDING" TO EXCLUDE STATE EXPENDITURES AND RESERVE INCREASES FOR FUNDING PUBLIC SCHOOLS, AND REQUIRING A ONE–TIME REDUCTION IN THE STATE'S BASE TO EXCLUDE THE STATE'S FISCAL–YEAR SPENDING FOR FUNDING PUBLIC SCHOOLS?

The summary prepared by the Board is as follows:

This measure authorizes the general assembly to exempt, by law, state appropriations for the financing of public schools pursuant to the "Public School Finance Act of 1994" or any successor school finance act from any statutory limitation on state appro-

---

1. Amend TABOR—Funding Education.

priations. For purposes of Section 20 of Article X of the state constitution (TABOR), the measure excludes school districts from the definition of "district." For purposes of the constitutional limitation on state fiscal year spending, the measure amends the definition of "fiscal year spending" to exclude state expenditures and reserve increases for the financing of public schools pursuant to the "Public School Finance Act of 1994" or any successor school finance act. The measure requires a one-time reduction in the state base for the 1998–99 state fiscal year in an amount equal to the amount of the state's fiscal year spending for funding public schools during the previous fiscal year.

Exemption of school districts from TABOR limitations could allow districts to accept additional state funds and raise additional local funds for schools without voter approval. The impact on individual school districts will vary because TABOR affects each school district differently. The measure should have no fiscal impact on local governments other than school districts.

Exempting state school finance appropriations from TABOR would allow growth in such appropriations in excess of the population growth percentage plus inflation. The measure would also allow the General Assembly to exempt school finance (a $1.786 billion appropriation for fiscal year 1998–99) from the statutory 6% limit on growth in state general fund appropriations.

The downward adjustment in the state's TABOR base, combined with the exemption of state school finance expenditures, could affect the amount of excess revenue that is required to be refunded under TABOR, absent voter approval to retain such excess. No title set.

Hearing adjourned May 20, 1998, 5:44 p.m.

May 29, 1998

- Julie Phillips and Jean Bonelli Motion for Rehearing denied

Hearing adjourned 2:29 p.m.

The text of the Proposed Initiative "1997–98 # 109" is as follows:

Be it Enacted by the People of the State of Colorado:

Section 20(1), (2)(b), (2)(e), (2)(g), and (7)(d) of Article X of the constitution of the state of Colorado are amended to read:

### Section 20. The Taxpayer's Bill of Rights. (1) General Provisions.

This section takes effect December 31, 1992 or as stated. Its preferred interpretation shall reasonably restrain most the growth of government. All provisions are self-executing and severable and supersede conflicting state constitutional, state statutory, charter, or other state or local provisions. Other limits on direct revenue, spending, and debt may be weakened only by future voter approval; except that the general assembly may exempt, by law, state appropriations for the financing of public schools pursuant to the "Public School Finance Act of 1994," Article 54 of Title 22, Colorado Revised Statutes, or any successor school finance act, from any statutory limitation on state appropriations without future voter approval. Individual or class action enforcement suits may be filed and shall have the highest civil priority of resolution. Successful plaintiffs are allowed costs and reasonable attorney fees, but a district is not unless a suit against it be ruled frivolous. Revenue collected, kept, or spent illegally since four full fiscal years before a suit is filed shall be refunded with 10% annual simple interest from the initial conduct. Subject to judicial review, districts may use any reasonable method for refunds under this section, including temporary tax credits or rate reductions. Refunds need not be proportional when prior payments are impractical to identify or return. When annual district revenue is less than annual payments on general obligation bonds, pensions, and final court judgments, (4)(a) and (7) shall be suspended to provide for the deficiency.

(2) **Term definitions.** Within this section:

(b) "District" means the state and any local government, excluding enterprises and school districts.

(e) "Fiscal year spending" means all district expenditures and reserve increases ex-

cept, as to both, those for refunds made in the current or next fiscal year, those for the financing of public schools pursuant to the "Public School Finance Act of 1994," Article 54 of Title 22, Colorado Revised Statutes, or any successor school finance act, or those from gifts, federal funds, collections for another government, pension contributions by employees and pension fund earnings, reserve transfers or expenditures, damage awards, or property sales.

(g) "Local growth for a district" means a net percentage change in actual value of all real property in a district from construction of taxable real property improvements, minus destruction of similar improvements, and additions to, minus deletions from, taxable real property.

(7) **Spending limits. (d)** If revenue from sources not excluded from fiscal year spending exceeds these limits in dollars for that fiscal year, the excess shall be refunded in the next fiscal year unless voters approve a revenue change as an offset. Initial district bases are current fiscal year spending and 1991 property tax collected in 1992. In addition to any other changes required by this paragraph (d), for the state fiscal year commencing on July 1, 1998, the state base shall be decreased by an amount equal to the amount of the state's fiscal year spending during the previous fiscal year for the financing of public schools pursuant to the "Public School Finance Act of 1994," Article 54 of Title 22, Colorado Revised Statutes. Qualification or disqualification as an enterprise shall change district bases and future year limits. Future creation of district bonded debt shall increase, and retiring or refinancing district bonded debt shall lower, fiscal year spending and property tax revenue by the annual debt service so funded. Debt service changes, reductions, (1) and (3)(c) refunds, and voter-approved revenue changes are dollar amounts that are exceptions to, and not part of, any district base. Voter-approved revenue changes do not require a tax rate change.